UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARDA CLAY, as parent and next friend of C.C., a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| VHS WEST SUBURBAN MEDICAL CENTER, INC., | ) ) ) | No. 21 C 1634 |
| Defendant, | ) ) | Judge |
| VHS WEST SUBURBAN MEDICAL CENTER, INC., | ) ) ) | Formerly Case No. 2018 L 013059 Circuit Court of Cook County, Illinois |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Third-Party Defendant. | ) | |

## NOTICE OF REMOVAL OF A CIVIL ACTION AND SUBSTITUTION OF THE UNITED STATES AS DEFENDANT

To:     Dorothy Brown                           Jerome A. Vinkler
        Clerk of the Circuit Court              Vinkler Law Offices, Ltd.
        Richard J. Daley Center, Room 1001      7045 Veterans Boulvard, Suite A2
        50 West Washington Street               Burr Ridge, Illinois 60527
        Chicago, Illinois 60602

        Matt McElligott                         Carl M. Schultz
        Hall Prangle & Schoonveld,  LLC         Malecki & Brooks Law Group, LLC
        200 S. Wacker Dr., Ste. 330             205 East Butterfield Road, Suite 225
        Chicago, Illinois 60606                 Elmhurst, Illinois 60126

    The United States of America, by its attorney, John R. Lausch, Jr., United States Attorney

for the Northern District of Illinois, submits this notice of removal of the above-captioned civil

action from the Circuit Court of Cook County, Illinois, to the United States District Court,

Northern District of Illinois, pursuant to 42 U.S.C. § 233, and in support thereof states the following:

1.      On or about December 4, 2018, plaintiff Sharda Clay, as parent and next friend of C.C., a minor, commenced the above civil action in the Circuit Court of Cook County, Illinois, against VHS West Suburban Medical Center, Inc., d/b/a West Suburban Medical Center, alleging medical malpractice. A copy of the state court complaint is attached as Exhibit A.

2.      On or about December 30, 2019, defendant VHS West Suburban filed a third-party complaint against PCC Community Wellness Center; Jennifer Rossato, D.O.; Chidinma Osefo, M.D.; and Tamajah Gibson, M.D., alleging medical negligence, contribution, and contractual and implied indemnification. A copy of the third-party complaint is attached as Exhibit B.

3.      For purposes of this lawsuit, PCC Community Wellness Center is a private entity that receives grant money from the Public Health Service pursuant to 42 U.S.C. § 233. *See* Exhibit C. In addition, Rossato, Osefo, and Gibson were acting within the scope of their employment at PCC Community Wellness Center with respect to the incidents referred to in the complaint. *Id.*

4.      This notice of removal is filed in accordance with 42 U.S.C. § 233 upon certification by the designee of the Attorney General of the United States that Rossato, Osefo, and Gibson were acting within the scope of their employment at PCC Community Wellness Center with respect to the incidents referred to in the complaint. Exhibit C.

5.      This notice of removal may be filed without bond at any time before trial. 42 U.S.C. § 233(c). Trial has not yet been had in this action.

6.      Pursuant to the certification by the Attorney General's designee and the filing of this notice of removal, under 42 U.S.C. § 233(c), this civil action is deemed an action against the

United States, and the United States is substituted as the sole federal third-party defendant in place of defendants PCC Community Wellness Center, Rossato, Osefo, and Gibson.

WHEREFORE, this action now pending in the Circuit Court of Cook County, Illinois, is properly removed to this court pursuant to 42 U.S.C. § 233, and the United States is substituted as the third-party defendant for PCC Community Wellness Center; Jennifer Rossato, D.O.; Chidinma Osefo, M.D.; and Tamajah Gibson, M.D.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Alex Hartzler
ALEX HARTZLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-1390
alex.hartzler@usdoj.gov

# Exhibit A

**12-Person Jury**

FILED
12/4/2018 4:20 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

STATE OF ILLINOIS )
                ) ss
COUNTY OF COOK )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

SHARDA CLAY, as Parent and Next )
Friend of ████████, a minor )
                )
██████████ )
                )
    Plaintiffs, )
                )
v. )
                )
VHS WEST SUBURBAN MEDICAL )
CENTER, INC. d/b/a WEST SUBURBAN )
MEDICAL CENTER, a Corporation )      **2018L013059**
3 Erie Court )    Case No._____
Oak Park, Illinois 60302 )
                )
    Serve On: )
    CT Corporation System )
    208 So Lasalle Street, Suite 814 )
    Chicago, Illinois 60604 )
                )
    Defendant. )

FILED DATE: 12/4/2018 4:20 PM 2018L013059

### COMPLAINT AT LAW

Plaintiff, ████████, a minor, by and through his Parent and Next Friend SHARDA

CLAY, by and through his undersigned attorneys, Jerome A. Vinkler, Esq. of the Vinkler Law

Offices, Ltd., Christopher S. Norman, Esq. (*pro hac vice* to be applied for) and Jermaine Haughton,

Esq. (*pro hac vice* to be applied for) of Wais, Vogelstein, Forman & Offutt, LLC, complaining of

Defendants, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN

MEDICAL CENTER, and for a cause of action alleges as follows:

FILED DATE: 12/4/2018 4:20 PM  2018L013059

## PARTIES AND JURISDICTION

1. This is a medical malpractice case arising from care rendered to Ms. Sharda Clay and her then unborn child, ████████, on and around May 26, 2012 – May 27, 2012, at VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER (hereinafter "WEST SUBURBAN MEDICAL CENTER"), located in the County of Cook, State of Illinois.

2. As a consequence of the negligent treatment rendered by Defendant and its agents and or employees, ████████ was not timely and safely delivered and was caused to suffer severe brain injury, developmental delays, cognitive defects, and cerebral palsy, among other permanent and catastrophic injuries.

3. Sharda Clay is over the age of twenty one years and is a resident citizen of the State of Mississippi.

4. Sharda Clay is the parent and next friend of the minor Plaintiff, Cortez Clay.

5. ████████ is a minor who is a resident citizen of the State of Mississippi, residing with his parent and next friend, Sharda Clay.

6. Defendant WEST SUBURBAN MEDICAL CENTER is a Delaware corporation.

7. Defendant WEST SUBURBAN MEDICAL CENTER is engaged in the business of providing health care in the County of Cook and is subject to the jurisdiction and venue of this Court.

8. At all relevant times, Defendant WEST SUBURBAN MEDICAL CENTER acted directly and/or through its respective actual and/or apparent agents, servants and employees, who acted within the scope of their agency and/or employment with respect to the care and treatment

2

of Sharda Clay and her fetus,　　　　 , including but not limited to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., Tamajah Gibson, M.D., and other physicians, residents, and labor and delivery nurses and staff.

9. At all times relevant hereto, Tina Devito, R.N. was a registered nurse licensed by the State of Illinois and was engaged in the practice of nursing, including obstetrical nursing.

10. At all times relevant hereto, Nurse Devito provided services and treated patients in Chicago, Illinois, in the County of Cook, specifically at WEST SUBURBAN MEDICAL CENTER in the County of Cook.

11. At all times relevant hereto, Nurse Devito held herself out to Sharda Clay in particular and the public in general as being an able and skilled obstetrical nurse, possessing the same level of care and skill required by the nursing profession generally under like and similar circumstances and that she was well able to render proper and adequate obstetrical nursing care to Sharda Clay and　　　　 at all times.

12. At all times relevant hereto, Nurse Devito acted within the scope of her authority as an actual and/or apparent agent, servant and/or employee of Defendant WEST SUBURBAN MEDICAL CENTER.

13. At all times relevant hereto, Jennifer Rossato, D.O. was a physician licensed by the State of Illinois and was engaged in the practice of medicine in the field of family medicine, which included providing obstetrical and gynecological care.

14. At all times relevant hereto, Jennifer Rossato, D.O. provided services and treated patients in Chicago, Illinois, in the County of Cook, specifically at WEST SUBURBAN MEDICAL CENTER in the County of Cook.

3

15.     At all times relevant hereto, Jennifer Rossato, D.O. held herself out to Sharda Clay in particular and the public in general as being an able and skilled physician, possessing the same level of care and skill required by the profession generally under like and similar circumstances and that she was well able to render proper and adequate obstetrical care to Sharda Clay and ▮ ▮ at all times.

16.     Jennifer Rossato, D.O. is subject to the jurisdiction and venue of this Court.

17.     At all times relevant hereto, Jennifer Rossato, D.O. acted within the scope of her authority as an actual and/or apparent agent, servant and/or employee of Defendant WEST SUBURBAN MEDICAL CENTER.

18.     At all times relevant hereto, Chidinma Osefo, M.D. was a physician licensed by the State of Illinois and was engaged in the practice of medicine in the field of family medicine, which included providing obstetrical and gynecological care.

19.     At all times relevant hereto, Chidinma Osefo, M.D. provided services and treated patients in Chicago, Illinois, in the County of Cook, specifically at WEST SUBURBAN MEDICAL CENTER in the County of Cook.

20.     At all times relevant hereto, Chidinma Osefo, M.D. held herself out to Sharda Clay in particular and the public in general as being an able and skilled physician, possessing the same level of care and skill required by the profession generally under like and similar circumstances and that she was well able to render proper and adequate obstetrical care to Sharda Clay and ▮ ▮ at all times.

21.     At all times relevant hereto, Chidinma Osefo, M.D. acted within the scope of her authority as an actual and/or apparent agent, servant and/or employee of Defendant WEST

FILED DATE: 12/4/2018 4:20 PM    2018L013059

4

SUBURBAN MEDICAL CENTER.

22. At all times relevant hereto, Tamajah Gibson, M.D. was a physician licensed by the State of Illinois and was engaged in the practice of medicine in the field of family medicine, which included providing obstetrical and gynecological care.

23. At all times relevant hereto, Tamajah Gibson, M.D. provided services and treated patients in Chicago, Illinois, in the County of Cook, specifically at WEST SUBURBAN MEDICAL CENTER in the County of Cook.

24. At all times relevant hereto, Tamajah Gibson, M.D. held herself out to Sharda Clay in particular and the public in general as being an able and skilled physician, possessing the same level of care and skill required by the profession generally under like and similar circumstances and that she was well able to render proper and adequate obstetrical care to Sharda Clay and ▇▇▇▇ ▇▇▇▇ at all times.

25. At all times relevant hereto, Tamajah Gibson, M.D. acted within the scope of her authority as an actual and/or apparent agent, servant and/or employee of Defendant WEST SUBURBAN MEDICAL CENTER.

## FACTS COMMON TO ALL COUNTS

26. Ms. Clay received her prenatal care at the Lake Street Family Health Center in Chicago. It appears as though all of Ms. Clay's prenatal visits were with Rebecca DeHoek, M.D., who was not involved in Ms. Clay's labor and delivery admission. Ms. Clay's prenatal course appears to have been without any significant abnormality.

27. Ms. Clay's obstetrical history was significant for one prior pregnancy, which appears to have been delivered via cesarean section at term for fetal intolerance to labor.

5

FILED DATE: 12/4/2018 4:20 PM 2018L013059

28.     The prenatal records suggest that Ms. Clay elected to attempt a trial of labor after cesarean (TOLAC) in the pregnancy which is the subject of this case.

29.     Ms. Clay presented directly to West Suburban Hospital at approximately 20:00 on May 26, 2012 with complaints of contractions. At the time, Ms. Clay was approximately 40w2d pregnant. The attending physician is noted to be Dr. Amelia Ryan, although it does not appear as though she was involved in Ms. Clay's care beyond a few initial interactions on the day of admission.

30.     Upon admission, Ms. Clay was hooked up to an electronic fetal heart rate monitor and tocodynamometer, and her contractions and the fetal heart rate were monitored continuously. An intrauterine pressure catheter (IUPC) appears to have been in use during the majority of her stay, and it is clear that Ms. Clay's contractions were adequate both in terms of strength and frequency throughout the entire admission.

31.     At 20:15 on the 26th, Dr. Ryan performed a cervical exam which revealed that Ms. Clay was 2 cm dilated, 50% effaced, and that the baby was in the -3 station (2/50/-3). At 20:52, Dr. Ryan performed another cervical exam and documented her findings as 2/70/-3. At 21:42, Dr. Ryan admitted Ms. Clay to West Suburban Hospital's Family Medicine Service with a diagnosis of active labor.

32.     Dr. Lanoue performed another cervical exam at 22:24 on the 26th, and documented the results as follows: 2/70/-1. An epidural was placed at 22:45. Dr. Eary performed a cervical exam at 00:03 on the 27th, the results of which are documented as 2/60/-1. Early decelerations are documented by the providers during the early morning hours of the 27th. At 02:49 on the 27th, Dr. Eary documented the results of another cervical exam as follows: 3/70/-1.

FILED DATE: 12/4/2018 4:20 PM 2018L013059

33.  Ms. Clay's membranes were artificially ruptured at 02:57, and heavy meconium was noted. The IUPC was placed at 03:15. The strip remained concerning throughout the morning hours of the 27th, with recurrent early, and variable decelerations. Dr. Lanoue performed another cervical exam at 06:15, and documented that Ms. Clay had progressed to 6/80/0.

34.  At 09:15 on the 27th, Nurse Devito performed a cervical exam and documented that Ms. Clay was at 7/80/1.

35.  It appears as though Dr. Rossato was involved in Ms. Clay's care by 09:38.

36.  Nurse Devito documented that she reviewed the fetal monitoring strip at 10:00, 10:27, and 10:30, which was, again, concerning through much of the admission.

37.  Ms. Clay was seen and examined by Dr. Osefo at 11:37 on the 27th. Dr. Osefo performed a cervical exam, and documented that Ms. Clay was at 7/80/+1. Just a few minutes later, at 11:48, Dr. Osefo documented the results of another cervical exam as 8/90/0. Dr. Osefo also documented, "making cervical change."

38.  Nurse Devito remained actively involved in Ms. Clay's care, and documented that she reviewed the fetal monitoring strip at 11:58, 12:30, 13:01, and 13:30. At around 12:50, the strip evidences marked variability. At around 13:20, the strip evidences recurrent late decelerations. At around 13:41, the providers documented at prolonged fetal heart rate deceleration lasting 7 minutes with a nadir of 80's-90's. Also at 13:41, there was marked variability. The case was apparently discussed with "level II attending and OB back-up, Dr. Chorazempa" who recommended "continuing labor and giving terbutaline if needed."

7

39.     Drs. Osefo and Gibson performed another cervical exam at 13:45, and documented their results as follows: 9/90/0. The records make clear that Nurse Devito was at the bedside with Drs. Osefo and Gibson at this time.

40.     Nurse Devito documented that she evaluated the fetal monitoring strip again at 13:46. By 13:58, it is documented that Ms. Clay was "on hands and knees, tolerating well."

41.     Ms. Clay's cervix was not checked again until 15:02. Dr. Rossato performed this cervical exam, and documented that Ms. Clay was at 8/90/-1, which represents an absence of cervical progress, despite very adequate contractions, for the nearly three and a half hours since 11:40 (when she was noted to be 8/90/0). The 15:02 note which includes Ms. Clay's cervical status at that time is attributed in the record to both Dr. Rossato, and Nurse Devito. The concerns with the fetal heart rate tracing were ongoing at this time, with recurrent prolonged decelerations. Despite this obvious failure to progress, an arrest of labor was not diagnosed by Dr. Rossato, and a cesarean section was not called. Moreover, Nurse Devito, who was also responsible for monitoring both fetal status and maternal progress throughout all stages of labor, did not identify this clinically significant change (or lack thereof) in Ms. Clay's condition/status, and failed to immediately report that to the providers. Indeed, Nurse Devito was required to notify the providers of her assessments of both fetal status and maternal progress, and to report any abnormal changes in labor progress. Moreover, in light of the fact that Dr. Rossato was apparently aware of Ms. Clay's cervical status and yet failed to diagnose an arrest of labor and call for a cesarean section, the standard of care required Nurse Devito to initiate the chain of command to ensure Ms. Clay's safety, and the quality of care being rendered to her – she did not.

42.     Nurse Devito evaluated the fetal monitoring strip again at 16:03.

8

43.     At 16:25, Dr. Rossato performed another cervical exam which again showed no progress (8/90/-1). Dr. Rossato documented at this time "if no cervical change by next exam, consider c/s."

44.     Nurse Devito evaluated the fetal monitoring strip again at 16:30 and 17:00.

45.     Dr. Osefo performed another cervical exam at 17:15, and documented her findings as follows: 8/80/0. This represents at complete failure to progress during the nearly 4 and a half hours since 11:40 (when she was noted to be 8/90/0 by Dr. Osefo). The fetal monitoring strip remained concerning at this time. The physicians noted their decision to perform a cesarean section at 17:24, the indication for which was noted to be "prior c-section, [failure to progress]."

46.     At 17:30, Dr. Gibson incorrectly noted that Ms. Clay had "no change in cervical status in 2 hours, despite adequate contractions" – in fact, by 17:30, there had been no change in Ms. Clay's cervical status *for nearly 6 hours*. Dr. Osefo performed another cervical exam at what appears to be 17:35, and noted the results as follows: 7/80/0. She also noted that there was a prolonged deceleration of the fetal heart rate at the time of the cervical exam to a nadir or 70 BPM which lasted for three minutes. It is documented that Dr. Osefo discussed these findings with Dr. Gibson at that time.

47.     At 17:44, Nurse Devito documents "decision made to take pt to OR for failure to progress."

48.     Ms. Clay was apparently sent to the OR at 18:12, and anesthesia was started at 18:20. Upon arrival to the OR, the fetal monitor was replaced from 18:22-18:35. During this time, the babies baseline fetal heart rate was appropriate at 160 BPM, the variability was good, and there are no significant decelerations, which evidences that the unborn child's acid-base status was

9

FILED DATE: 12/4/2018 4:20 PM    2018L013059

appropriate at that time, and that the child more likely than not had not sustained any injury by that time.

49. The cesarean section, which was performed by Dr. Gibson with the assistance of Dr. Osefo, did not begin until 18:42. Multiple records make clear that, in addition to the failure to progress, the cesarean section was performed because of the non-reassuring fetal heart tracing. Despite these concerns for fetal wellbeing throughout the admission and immediately prior to the decision to perform a cesarean section, it took Drs. Gibson and Osefo 30 minutes from the time of the incision to deliver baby Cortez. Moreover, it took Drs. Gibson and Osefo nearly an hour and a half to deliver baby Cortez from the time they made the decision to perform the cesarean section.

50. Baby Cortez was severely depressed at delivery, with APGARS of 3, 5, and 5. Not surprisingly, he was delivered with significant caput succedaneum, which resulted from the *seven and a half hours* that Ms. Clay labored without progress (during this time, the contractions caused the fetal head to repeatedly impact the bony pelvis, causing injury to the fetal head). Moreover, he was severely acidotic at birth, with a cord gas pH of 6.766 and a base excess of -25.6.

51. Baby Cortez was diagnosed with hypoxic ischemic encephalopathy, and transferred to Children's Memorial Hospital for cooling. He has developed significant physical and neurological injuries.

## COUNT I: WEST SUBURBAN MEDICAL CENTER
## MEDICAL NEGLIGENCE
## PRINCIPAL/AGENCY

Plaintiff,                     , a minor, by and through his Parent and Next Friend, SHARDA CLAY, complaining of Defendant, WEST SUBURBAN MEDICAL CENTER, acting by and through its actual and or apparent agents, servants, and or employees, including, but not necessarily

10

FILED DATE: 12/4/2018 4:20 PM   2018L013059

limited to, Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., alleges as follows:

52.    Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as if fully stated herein.

53.    That Defendant WEST SUBURBAN MEDICAL CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees, including, but not necessarily limited to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., breached the standard of care and was negligent in one or more of the following ways:

- a.    Failing to properly assess Sharda Clay and her fetus;

- b.    Failing to recognize Sharda Clay's condition and to do so on a timely basis;

- c.    Failing to recognize the fetus's condition and to do so on a timely basis;

- d.    Failing to respond appropriately to the mother's condition and the fetus's condition in a timely manner;

- e.    Failing to respond appropriately to the fetal heart tracings and other signs and symptoms of fetal stress and/or fetal distress;

- f.    Failing to appreciate the appropriate method of delivery required;

- g.    Failing to properly manage and monitor the labor and delivery so as to prevent avoidable injury to the baby;

- h.    Failing to advise Sharda Clay of the risks of continuing a trial of labor rather than delivering the baby by cesarean section;

- i.    Failing to deliver             in a timely manner;

11

j. Failing to perform a cesarean section in a timely manner;

k. Failing to properly read and interpret the fetal heart tracings;

l. Failing to timely recognize and appropriately respond to signs and symptoms of fetal stress and/or fetal distress;

m. Failing to intervene in a timely manner to prevent severe injuries to ;

n. Failing to initiate the chain of command in the setting of the physician's obviously negligent actions;

o. Failing to provide adequate supervision of obstetrical personnel;

p. Failing to appropriately and timely diagnose a labor dystocia/failure to progress.

54. At all times relevant, the physicians and labor and delivery staff, including, but not necessarily limited to, Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., were the actual and/or apparent agents, servants and/or employees of Defendant WEST SUBURBAN MEDICAL CENTER, and were acting within the scope of the employment and/or agency when they rendered care and treatment to Sharda Clay and ▮▮▮.

55. But for the negligence of Defendant WEST SUBURBAN MEDICAL CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees, including, but not necessarily limited to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., the injuries and damages of Plaintiff (described herein) would not have occurred. Furthermore, the injuries and damages of Plaintiff (described herein)

would not have occurred had Defendant (individually and by and through its agents, servants and/or employees), jointly and severally, acted in accordance with the standards of care required of hospitals engaged in obstetrical care, in Chicago, Illinois or in a similar locality.

56.     As a direct and proximate result of the negligence of Defendant WEST SUBURBAN MEDICAL CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees, including, but not necessarily limited to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., (as described above), Plaintiff,            , suffered asphyxia, hypoxic-ischemic encephalopathy, brain damage, cerebral palsy, seizures, developmental delays, cognitive deficits, poor motor skills, and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to his usual business and affairs and he was otherwise permanently injured in mind and body, including but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future, past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity, the need for special equipment and devices to help compensate for his impairments and/or disfigurement, the need for special schooling and housing due to his impairments, and other damages.

57.     As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendant WEST SUBURBAN MEDICAL CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees, including, but not necessarily limited to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., the minor,            has required and will continue to require substantial medical,

13

FILED DATE: 12/4/2018 4:20 PM    2018L013059

nursing, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical; and other care including specialized devices, equipment, transportation and housing for which significant sums of money have been and will continue to be expended, in the past, present, and future.

58.    Attached as Exhibit "A" is an Affidavit of Attorney Jerome Vinkler, as required by 735 ILCS 5/2-622.

59.    The medical records of WEST SUBURBAN MEDICAL CENTER have been reviewed by physicians specializing in the same area of health care for more than six years who are knowledgeable in the relevant issues involved in this case and who are of the opinion that the Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees, including, but not necessarily limited to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., was negligent in the care and treatment of SHARDA CLAY and                     , a minor. Attached as Exhibits "B", "C", and "D" are the reports of those healthcare professionals.

WHEREFORE, Plaintiff                    , a minor, by and through his Parent and Next Friend, SHARDA CLAY, prays that this Honorable Court enter judgment against Defendant, WEST SUBURBAN MEDICAL CENTER, for a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS TRIAL BY JURY OF TWELVE.

## COUNT II: WEST SUBURBAN MEDICAL CENTER INSTITUTIONAL NEGLIGENCE

Plaintiff,                     a minor, by and through his Parent and Next Friend, SHARDA

14

FILED DATE: 12/4/2018 4:20 PM    2018L013059

CLAY, complaining of Defendant, WEST SUBURBAN MEDICAL CENTER, alleges as follows:

60.     Plaintiff restates and re-alleges the preceding as paragraphs of this Complaint as if fully stated herein.

61.     That Defendant WEST SUBURBAN MEDICAL CENTER breached the standard of care and was negligent in one or more of the following ways:

> a.     Failing to have and follow safe practices for monitoring, reporting and responding to signs and symptoms of fetal stress and/or fetal distress;
>
> b.     Failing to establish and/or follow safe practices for monitoring, reporting and responding to signs and symptoms of fetal stress and/or fetal distress;
>
> c.     Failing to establish and/or follow safe policies and practices in managing Ms. Clay's labor and delivery; and
>
> d.     Failing to adequately train, supervise and/or monitor its respective actual and/or apparent agents and other employees.

62.     At all times relevant, the physicians and labor and delivery staff, including, but not necessarily limited to, Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., were the actual and/or apparent agents, servants and/or employees of Defendant WEST SUBURBAN MEDICAL CENTER, and were acting within the scope of the employment and/or agency when they rendered care and treatment to Sharda Clay and █████

63.     But for the negligence of Defendant WEST SUBURBAN MEDICAL CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees, including, but not necessarily limited to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma

15

FILED DATE: 12/4/2018 4:20 PM    2018L013059

Osefo, M.D., and Tamajah Gibson, M.D., the injuries and damages of Plaintiff (described herein) would not have occurred. Furthermore, the injuries and damages of Plaintiff (described herein) would not have occurred had Defendant (individually and by and through its agents, servants and/or employees), jointly and severally, acted in accordance with the standards of care required of hospitals engaged in obstetrical care, in Chicago, Illinois or in a similar locality.

64. As a direct and proximate result of the negligence of Defendant WEST SUBURBAN MEDICAL CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees, including, but not necessarily limited to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., (as described above), Plaintiff, , suffered asphyxia, hypoxic-ischemic encephalopathy, brain damage, cerebral palsy, seizures, developmental delays, cognitive deficits, poor motor skills, and other permanent and disabling injuries and damages, and was and will be hindered and prevented from attending to his usual business and affairs and he was otherwise permanently injured in mind and body, including but not limited to physical injury, great pain and mental anguish experienced in the past and which will continue to be experienced in the future, past, present and future medical and related expenses, disfigurement, diminished quality of life, a loss of earnings and earnings capacity, the need for special equipment and devices to help compensate for his impairments and/or disfigurement, the need for special schooling and housing due to his impairments, and other damages.

65. As a further direct and proximate result of the aforesaid negligent acts and/or omissions of Defendant WEST SUBURBAN MEDICAL CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees, including, but not necessarily limited

16

to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., the minor, has required and will continue to require substantial medical, nursing, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical; and other care including specialized devices, equipment, transportation and housing for which significant sums of money have been and will continue to be expended, in the past, present, and future.

66. Attached as Exhibit "A" is an Affidavit of Attorney Jerome Vinkler, as required by 735 ILCS 5/2-622.

67. The medical records of WEST SUBURBAN MEDICAL CENTER have been reviewed by physicians specializing in the same area of health care for more than six years who are knowledgeable in the relevant issues involved in this case and who are of the opinion that the Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees, including, but not necessarily limited to Tina Devito, R.N., Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., was negligent in the care and treatment of SHARDA CLAY and , a minor. Attached as Exhibits "B", "C", and "D" are the reports of those healthcare professionals.

WHEREFORE, Plaintiff , a minor, by and through his Parent and Next Friend, SHARDA CLAY, prays that this Honorable Court enter judgment against Defendant, WEST SUBURBAN MEDICAL CENTER, for a sum in excess of the jurisdictional requirements of this Court, costs of suit, and any other relief that this Honorable Court finds fair and just. PLAINTIFF DEMANDS TRIAL BY JURY OF TWELVE.

17

FILED DATE: 12/4/2018 4:20 PM 2018L013059

FILED DATE: 12/4/2018 4:20 PM   2018L013059

Respectfully submitted,

Jerome Vinkler, Esq.
Vinkler Law Offices, Ltd.
20 N Clark St #3100-A,
Chicago, IL 60602
630-655-9545
Attorney for Plaintiff

Of Counsel:
Christopher S. Norman, Esq. (*pro hac vice* to be applied for)
Jermaine Haughton, Esq. (*pro hac vice* to be applied for)
Wais, Vogelstein, Forman & Offutt, LLC
1829 Reisterstown Road, Suite 425
Baltimore, Maryland 21208
(410) 998-3600
(FAX) (410) 998-3680
Attorneys for Plaintiff

18

# Exhibit B

3039904/XSM/ELB

FILED
12/30/2019 10:46 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L013059

7880704

DOROTHY BROWN                                        Firm ID 41206

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| SHARDA CLAY, as Parent and Next Friend of ██████████, a minor ████████ | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | NO.    18 L 013059 |
| VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBANMEDICAL CENTER, a Corporation 3 Erie Court Oak Park, Illinois 60302, | ) ) ) ) ) ) | |
| Defendant. | ) ) | |
| VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, | ) ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| PCC COMMUNITY WELLNESS CENTER, JENNIFER ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., | ) ) ) ) | |
| Third Party Defendants. | ) | |

## THIRD PARTY COMPLAINT

NOW COMES the Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, by and through its attorneys, SMITHAMUNDSEN LLC and pursuant to 735 ILCS 5/2-406, for its Third Party Complaint against PCC COMMUNITY WELLNESS CENTER, JENNIFER ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., states as follows:

## JURISDICTIONAL STATEMENT

1.     Plaintiff Sharda Clay is a resident citizen of the State of Mississippi.

2.     Plaintiff ████████ is a minor who is a resident citizen of the State of Mississippi, residing with his parent and next friend, Sharda Clay.

FILED DATE: 12/30/2019 10:46 AM   2018L013059

3.     Third Party Plaintiff VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER is a Delaware corporation with its principal place of business in Texas.

4.     Third Party Defendant PCC COMMUNITY WELLNESS CENTER is an Illinois corporation with its principal place of business located at 14 Lake Street, Oak Park, Illinois.

5.     Third Party Plaintiff VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER ("WSMC") is engaged in the business of providing health care in the County of Cook.

6.     Third Party Defendant PCC COMMUNITY WELLNESS CENTER ("PCC") is a provider of medical services to individuals in Cook County, Illinois, as a Health Center Program grantee under 42 U.S.C. 254b, and a deemed Public Health Service employee under 42 U.S.C. 233(g)-(n).

7.     Third Party Defendant JENNIFER L. ROSSATO, D.O., is a family medicine physician licensed to practice medicine in the State of Illinois, and she is a resident of Chicago, Illinois.

8.     Third Party Defendant CHIDINMA OSEFO, M.D. is a family medicine physician licensed to practice medicine in the State of Illinois, and she is a resident of Illinois.

9.     Third Party Defendant TAMAJAH GIBSON, M.D., is a family medicine physician licensed to practice medicine in the State of Illinois, and she is a resident of Berwyn, Illinois.

## FACTUAL ALLEGATIONS

10.     This medical malpractice case is pending in the Circuit Court of Cook County, Illinois, Case No. 2018 L 13059.  *See* **Exhibit A, Plaintiffs' Amended Complaint**.  Plaintiffs allege medical negligence arising from care rendered to Ms. Sharda Clay and her then unborn child, ███████, on and around May 26, 2012 — May 27, 2012, at WSMC.

11.     Plaintiffs allege that, at all relevant times, WSMC acted directly and/or through its actual and/or apparent agents, servants and employees, including, but not limited to, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., TAMAJAH GIBSON, M.D., and other physicians, residents, and labor and delivery nurses and staff, acted within the scope of their agency and/or employment with respect to the care and treatment of Sharda Clay and her fetus, ███████.

12.     WSMC filed its answer to Plaintiffs' Amended Complaint denying all material allegations against it and specifically denying that JENNIFER L. ROSSATO, D.O., CHIDINMA

OSEFO, M.D., and TAMAJAH GIBSON, M.D. were its actual or apparent agents, servants or employees. *See* **Exhibit B, WSMC's Answer**.

13.     At all times relevant hereto, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., were physicians licensed by the State of Illinois engaged in the practice of family medicine, which included providing obstetrical and gynecological care.

14.     At all times relevant hereto, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., held themselves out to Sharda Clay in particular, and the public in general, as being able and skilled physicians, possessing the same level of care and skill required by the profession generally under like and similar circumstances and that each was well able to render proper and adequate obstetrical care to Sharda Clay and ████████ at all times.

15.     At all times relevant hereto, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., acted within the scope of their authority as actual and/or apparent agents, servants and/or employees of PCC.

16.     Sharda Clay received her prenatal care at the PCC Lake Street Family Health Center in Chicago, which is one of several health centers owned and operated by PCC.

17.     TAMAJAH GIBSON, M.D, as an actual and/or apparent agent of PCC, provided prenatal care to Plaintiff Sharda Clay during the pregnancy of her unborn child, Plaintiff ████, through PCC Lake Street Family Health Center.

18.     Ms. Clay's obstetrical history was significant for one prior pregnancy, which appears to have been delivered via cesarean section.

19.     Ms. Clay presented to WSMC on May 26, 2012 with complaints of contractions. At the time, Ms. Clay was approximately 40w2d pregnant. Upon admission, Ms. Clay was hooked up to an electronic fetal heart rate monitor and tocodynamometer, and her contractions and the fetal heart rate were monitored continuously.

20.     Ms. Clay's membranes were artificially ruptured at 02:57, and described as heavy meconium. An IUPC was in place at 03:15. A cervical exam at 06:15 documented that Ms. Clay had progressed to 6/80/0.

21.     At 09:15 on May 27th, a cervical exam documented that Ms. Clay was at 7/80/1.

22.     JENNIFER L. ROSSATO, D.O., was involved in Ms. Clay's care by 09:38 on May 27, 2012.

FILED DATE: 12/30/2019 10:46 AM   2018L013059

3

FILED DATE: 12/30/2019 10:46 AM   2018L013059

23.     Ms. Clay was seen and examined by CHIDINMA OSEFO, M.D., at 11:37 on the 27th. Dr. OSEFO performed a cervical exam, and documented that Ms. Clay was at 7/80/+1. At 11:48, Dr. OSEFO documented the results of another cervical exam as 8/90/0.

24.     Drs. OSEFO and GIBSON performed another cervical exam and documented the results as 9/90/0.

25.     By 13:58, it is documented that Ms. Clay was "on hands and knees, tolerating well."

26.     Dr. ROSSATO documented a vaginal exam at 15:02 and documented that Ms. Clay was at 8/90/-1.

27.     Dr. OSEFO performed a cervical exam at 17:15, and documented her findings as follows: 8/80/0. A decision to perform a cesarean section was made at 17:24 for failure to progress.

28.     The cesarean section, which was performed by Dr. GIBSON with the assistance of Dr. OSEFO, began at 18:42 and ███████ was delivered at approximately 19:12.

29.     According to Plaintiffs' Amended Complaint, Baby ████ was severely depressed at delivery, with APGARS of 3, 5, and 5 and significant caput succedaneum. Plaintiffs further allege he was severely acidotic at birth, with a cord gas pH of 6.766 and a base excess of -25.6. Baby ████ was diagnosed with hypoxic ischemic encephalopathy, and transferred to Children's Memorial Hospital for cooling. Plaintiffs allege he has developed significant physical and neurological injuries.

**COUNT I**
**MEDICAL NEGLIGENCE – CONTRIBUTION**
**PCC COMMUNITY WELLNESS CENTER, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO,**
**M.D., AND TAMAJAH GIBSON, M.D**

30.     Third Party Plaintiff restates and re-alleges the preceding paragraphs 1-29 of this Third Party Complaint as if fully stated herein.

31.     At all relevant times, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., were the actual and/or apparent agents, servants and/or employees of PCC, and were acting within the scope of their employment and/or agency when they provided care and treatment to Plaintiffs Sharda Clay and ███████ on May 26 through May 27, 2012.

4

FILED DATE: 12/30/2019 10:46 AM   2018L013059

32.     Third Party Defendant PCC, acting directly and/or through its actual and/or apparent agents, servants and/or employees JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D. and TAMAJAH GIBSON, M.D., and each individual Third Party Defendant JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D. and TAMAJAH GIBSON, M.D., breached the standard of care and was negligent in one or more of the following ways:

   a.     Failing to properly assess Sharda Clay and her fetus;

   b.     Failing to recognize Sharda Clay's condition and to do so on a timely basis;

   c.     Failing to recognize the fetus's condition and to do so on a timely basis;

   d.     Failing to respond appropriately to the mother's condition and the fetus's condition in a timely manner;

   e.     Failing to respond appropriately to the fetal heart tracings and other signs and symptoms of fetal stress and/or fetal distress;

   f.     Failing to appreciate the appropriate method of delivery required;

   g.     Failing to properly manage and monitor the labor and delivery so as to prevent avoidable injury to the baby;

   h.     Failing to advise Sharda Clay of the risks of continuing a trial of labor rather than delivering the baby by cesarean section;

   i.     Failing to deliver ███████ in a timely manner;

   j.     Failing to perform a cesarean section in a timely manner;

   k.     Failing to properly read and interpret the fetal heart tracings;

   l.     Failing to timely recognize and appropriately respond to signs and symptoms of fetal stress and/or fetal distress;

   m.     Failing to intervene in a timely manner to prevent severe injuries to ███████;

   n.     Failing to initiate the chain of command in the setting of the physician's obviously negligent actions;

   o.     Failing to provide adequate supervision of obstetrical personnel;

   p.     Failing to appropriately and timely diagnose a labor dystocia/failure to progress.

33.     As a direct and proximate result of the negligence of Third Party Defendants PCC, acting directly and/or through its actual and/or apparent agents, servants and/or

FILED DATE: 12/30/2019 10:46 AM    2018L013059

employees Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., and each Third Party Defendant JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., individually (as described above), Plaintiffs were injured.

34.     As a result of the negligent acts or omissions on the part of Third Party Defendants PCC, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., the Third Party Plaintiff WSMC, is entitled to contribution from the Third Party Defendants PCC, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., in an amount to be determined based upon their relative culpability pursuant to the Illinois Contribution Act, 740 ILCS 100/01, *et seq*.

35.     Should a jury find in favor of the Plaintiffs, and against the Third Party Plaintiff/Defendant, WSMC is entitled to have judgment entered in its favor, and against the Third Party Defendants, PCC, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., in accordance with their relative culpability pursuant to the Illinois Contribution Act.

WHEREFORE, the Third Party Plaintiff/Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, prays that, in the event judgment is entered in favor of the Plaintiffs and against it, then judgment also be entered in its favor and against PCC COMMUNITY WELLNESS CENTER, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., based upon their relative culpability for the injuries sustained by Plaintiffs.

## COUNT II
## CONTRACTUAL INDEMNIFICATION –
## PCC COMMUNITY WELLNESS CENTER

36.     Third Party Plaintiff restates and re-alleges the preceding paragraphs 1-29 of this Third Party Complaint as if fully stated herein.

37.     At all relevant times, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., were the actual and/or apparent agents, servants and/or employees of PCC, and were acting within the scope of their employment and/or agency when they provided care and treatment to Plaintiffs Sharda Clay and ▮▮▮▮▮▮ on May 26 through May 27, 2012.

38.     Third Party Defendant PCC, acting directly and/or through its actual and/or apparent agents, servants and/or employees JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO,

FILED DATE: 12/30/2019 10:46 AM 2018L013059

M.D., and TAMAJAH GIBSON, M.D., breached the standard of care and was negligent in one or more of the following ways:

a. Failing to properly assess Sharda Clay and her fetus;

b. Failing to recognize Sharda Clay's condition and to do so on a timely basis;

c. Failing to recognize the fetus's condition and to do so on a timely basis;

d. Failing to respond appropriately to the mother's condition and the fetus's condition in a timely manner;

e. Failing to respond appropriately to the fetal heart tracings and other signs and symptoms of fetal stress and/or fetal distress;

f. Failing to appreciate the appropriate method of delivery required;

g. Failing to properly manage and monitor the labor and delivery so as to prevent avoidable injury to the baby;

h. Failing to advise Sharda Clay of the risks of continuing a trial of labor rather than delivering the baby by cesarean section;

i. Failing to deliver ████████ in a timely manner;

l. Failing to perform a cesarean section in a timely manner;

m. Failing to properly read and interpret the fetal heart tracings;

1. Failing to timely recognize and appropriately respond to signs and symptoms of fetal stress and/or fetal distress;

q. Failing to intervene in a timely manner to prevent severe injuries to ████████;

r. Failing to initiate the chain of command in the setting of the physician's obviously negligent actions;

s. Failing to provide adequate supervision of obstetrical personnel;

t. Failing to appropriately and timely diagnose a labor dystocia/failure to progress.

39. As a direct and proximate result of the negligence of Third Party Defendant PCC, acting directly and/or through its actual and/or apparent agents, servants and/or employees Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D., Plaintiffs were injured.

FILED DATE: 12/30/2019 10:46 AM    2018L013059

40.     On or about January 1, 2010, West Suburban Medical Center and Third Party Defendant PCC entered into a Professional Services Agreement ("Agreement") to arrange for administration and delivery of certain professional medical services by PCC to West Suburban Medical Center patients. *See* **Exhibit C, Agreement**.

41.     On or about August 1, 2010, a Consent to Assignment and Amendment to Professional Services Agreement ("1st Amendment") was executed by PCC and WSMC, memorializing the assignment of West Suburban Medical Center's rights under the Agreement to Third Party Plaintiff VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER and amending certain provisions of the Agreement with PCC. *See* **Exhibit D, 1st Amendment**.

42.     The Agreement and 1st Amendment defined the scope of services PCC, by and through its physicians, provided to certain patients at West Suburban Medical Center. Additionally, the Agreement and 1st Amendment stated that PCC would "keep and maintain professional liability insurance for itself and each of its Physicians." *See* **Exhibit C, Agreement, para. 8.1.**

43.     Such coverage kept and maintained by PCC applied to any "PCC Assigned Patient" treated at the hospital. The phrase "PCC Assigned Patient" is defined as "any patient who is (a) **under the care of a physician who is employed by or under contract with PCC Community Wellness Center** or (b) not under the care of any other physician." *See* **Exhibit D, 1st Amendment, paras. 2 and 4 (emphasis added).**

44.     The Agreement further contained an indemnification clause wherein PCC agreed to "defend, indemnify and hold [WSMC], its officers, directors, agents, employees, affiliates, successors and assigns harmless for all losses, liabilities claims and expenses whatsoever, including attorneys fees, arising out of any act or omission of the indemnifying Party [PCC] relating to, arising out of, or in connection with this Agreement and the services to be provided hereunder." **Exhibit C, para. 9.2**.

45.     At all relevant times, Plaintiffs Sharda Clay and ███████ were patients under the care of a physician employed by or under contract with PCC Community Wellness Center, specifically Jennifer L. Rossato, D.O., Chidinma Osefo, M.D., and Tamajah Gibson, M.D.

46.     On March 21, 2019, WSMC tendered its defense and indemnification to PCC. *See* **Exhibit E, tender letter**.

8

FILED DATE: 12/30/2019 10:46 AM   2018L013059

47.     As of the date of filing this Third Party Complaint, PCC COMMUNITY WELLNESS CENTER has not undertaken the defense and/or indemnification of WSMC.

48.     Under the terms of the Agreement and amendments thereto, PCC owes WSMC a defense and indemnification in connection with Plaintiffs' lawsuit.

49.     If WSMC is found liable to Plaintiffs, either based on its own alleged acts and/or omissions, and/or based on the alleged acts and/or omissions of its actual and/or alleged apparent agents, servants and/or employees JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., then PCC is obligated under the terms of the Agreement and 1st Amendment, to defend and indemnify WSMC for such liability and for the attorneys' fees, costs, and expenses WSMC incurred in connection with the defense of this lawsuit.

WHEREFORE, the Third Party Plaintiff, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, respectfully requests that, if it be determined that it is liable to the Plaintiffs for any alleged negligence by PCC COMMUNITY WELLNESS CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., or that it is liable to Plaintiffs for any alleged negligence of Third Party Defendants JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and/or TAMAJAH GIBSON, M.D., individually—which it continues to deny—a judgment be entered in Third Party Plaintiff's favor and against PCC COMMUNITY WELLNESS CENTER, for contractual indemnification in an amount equal to any settlement entered into by or verdict rendered against VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, and for attorneys' fees, costs, expenses, and all sums allowed by law.

### COUNT III
### IMPLIED INDEMNIFICATION –
### JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., AND TAMAJAH GIBSON, M.D

50.     Third Party Plaintiff restates and re-alleges the preceding paragraphs 1-29 of this Third Party Complaint as if fully stated herein.

51.     Third Party Defendants JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., breached the standard of care and were negligent in one or more of the following ways:

a.      Failing to properly assess Sharda Clay and her fetus;

FILED DATE: 12/30/2019 10:46 AM  2018L013059

b.    Failing to recognize Sharda Clay's condition and to do so on a timely basis;

c.    Failing to recognize the fetus's condition and to do so on a timely basis;

d.    Failing to respond appropriately to the mother's condition and the fetus's condition in a timely manner;

e.    Failing to respond appropriately to the fetal heart tracings and other signs and symptoms of fetal stress and/or fetal distress;

f.    Failing to appreciate the appropriate method of delivery required;

g.    Failing to properly manage and monitor the labor and delivery so as to prevent avoidable injury to the baby;

h.    Failing to advise Sharda Clay of the risks of continuing a trial of labor rather than delivering the baby by cesarean section;

i.    Failing to deliver █████████ in a timely manner;

n.    Failing to perform a cesarean section in a timely manner;

o.    Failing to properly read and interpret the fetal heart tracings;

1.    Failing to timely recognize and appropriately respond to signs and symptoms of fetal stress and/or fetal distress;

u.    Failing to intervene in a timely manner to prevent severe injuries to █████████;

v.    Failing to initiate the chain of command in the setting of the physician's obviously negligent actions;

w.    Failing to provide adequate supervision of obstetrical personnel;

x.    Failing to appropriately and timely diagnose a labor dystocia/failure to progress.

52.    As a direct and proximate result of the negligence of Third Party Defendants JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., individually, (as described above), Plaintiffs were injured.

53.    Third Party Plaintiff had a pre-tort relationship with JENNIFER ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D.

54.    Prior to Plaintiffs' lawsuit, Third Party Plaintiff WSMC entered into written agreements ("Letter Agreements") with each Third Party Defendant JENNIFER L. ROSSATO,

FILED DATE: 12/30/2019 10:46 AM    2018L013059

D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D.  ***See* Group Exhibit F, Letter Agreements.**

55.    Under the terms of the Letter Agreements, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., were each responsible for providing certain physician coverage for "Non-PCC Assigned Patients," which is defined as "any patient under the obstetrical care of another physician who is not a physician employed by or under contract with PCC Community Wellness Center." *See* **Group Exhibit F.**

56.    Further, the Letter Agreements stated that PCC physicians were independent contractors over whom WSMC did not exercise any control.  WSMC only provided insurance coverage for PCC physician services that were provided to Non-PCC Assigned Patients as set out in the Letter Agreements.  *See* **Group Exhibit F.**

57.    As a consequence of the allegations in Plaintiffs' Amended Complaint, Plaintiffs now seek to hold Third Party Plaintiff WSMC vicariously liable for the acts and omissions of Third Party Defendants JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D.

58.    The pre-tort relationships between WSMC and JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., give rise to a duty implied in law, and/or equitable duty, on the part of the Third Party Defendants JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., to indemnify WSMC in connection with Plaintiffs' lawsuit if WSMC is found liable to Plaintiffs based on allegations of negligence by JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., as alleged actual and/or apparent agents, servants and/or employees of WSMC.

59.    If WSMC is found liable to Plaintiffs, based on the allegations of vicarious liability for the acts or omissions of JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., Third Party Plaintiff WSMC is entitled to implied contractual indemnification from JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D., and TAMAJAH GIBSON, M.D., to the extent of their own negligence, for any settlement entered into by and/or judgment against WSMC as a result of Third Party Defendants' negligence, and for attorneys' fees, costs and expenses of this lawsuit.

WHEREFORE, the Third Party Plaintiff VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER respectfully requests that, if it be determined that it is liable to Plaintiffs for any alleged negligence by JENNIFER L. ROSSATO, D.O., CHIDINMA

FILED DATE: 12/30/2019 10:46 AM    2018L013059

OSEFO, M.D. and/or TAMAJAH GIBSON, M.D., — liability that it continues to deny— a judgment be entered in Third Party Plaintiff's favor and against JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D. and TAMAJAH GIBSON, M.D., individually, for indemnity in an amount equal to any settlement entered into by or verdict rendered against VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, and for attorneys' fees, costs, expenses and all sums allowed by law.

**COUNT IV**
**– IMPLIED INDEMNIFICATION –**
**PCC COMMUNITY WELLNESS CENTER**

60.     Third Party Plaintiff restates and re-alleges the preceding paragraphs 1-29 of this Third Party Complaint, as if fully restated herein.

61.     At all times relevant, JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D. and TAMAJAH GIBSON, M.D., were the actual and/or apparent agents, servants and/or employees of Third Party Defendant PCC COMMUNITY WELLNESS CENTER, and were acting within the scope of their employment and/or agency for PCC when they rendered care and treatment to Sharda Clay and ███████.

62.     Third Party Defendant PCC COMMUNITY WELLNESS CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D. and TAMAJAH GIBSON, M.D., breached the standard of care and was negligent in one or more of the following ways:

    a.  Failing to properly assess Sharda Clay and her fetus;

    b.  Failing to recognize Sharda Clay's condition and to do so on a timely basis;

    c.  Failing to recognize the fetus's condition and to do so on a timely basis;

    d.  Failing to respond appropriately to the mother's condition and the fetus's condition in a timely manner;

    e.  Failing to respond appropriately to the fetal heart tracings and other signs and symptoms of fetal stress and/or fetal distress;

    f.  Failing to appreciate the appropriate method of delivery required;

    g.  Failing to properly manage and monitor the labor and delivery so as to prevent avoidable injury to the baby;

FILED DATE: 12/30/2019 10:46 AM   2018L013059

h. Failing to advise Sharda Clay of the risks of continuing a trial of labor rather than delivering the baby by cesarean section;

i. Failing to deliver ████████ in a timely manner;

j. Failing to perform a cesarean section in a timely manner;

k. Failing to properly read and interpret the fetal heart tracings;

l. Failing to timely recognize and appropriately respond to signs and symptoms of fetal stress and/or fetal distress;

m. Failing to intervene in a timely manner to prevent severe injuries to ████████;

n. Failing to initiate the chain of command in the setting of the physician's obviously negligent actions;

o. Failing to provide adequate supervision of obstetrical personnel; and/or

p. Failing to appropriately and timely diagnose a labor dystocia/failure to progress.

63.    As a direct and proximate result of the negligence of Third Party Defendant PCC COMMUNITY WELLNESS CENTER, acting directly and/or through its actual and/or apparent agents, servants and/or employees Jennifer L. Rossato, D.O., Chidinma Osefo, M.D. and Tamajah Gibson, M.D. (as described above), Plaintiffs were injured.

64.    Third Party Plaintiff had a pre-tort relationship with Third Party Defendant PCC COMMUNITY WELLNESS CENTER.

65.    On or about January 1, 2010, West Suburban Medical Center and Third Party Defendant PCC COMMUNITY WELLNESS CENTER entered into a Professional Services Agreement ("Agreement"), which was in effect at all relevant times and was subsequently assigned to Third Party Plaintiff VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER on August 1, 2010. *See* **Exhibit C and D**.

66.    Under the terms of the Agreement and 1st Amendment, PCC is responsible, through its employed and contracted physicians, for providing certain physician services to both Non-PCC Assigned and PCC Assigned Patients. *See* **Exhibit C and D**.

67.    The term "PCC Assigned Patient," shall mean any "any patient who is (a) under the care of a physician who is employed by or under contract with PCC Community Wellness Center or (b) not under the care of any other physician." *See* **Exhibit D, para. 4**.

13

FILED DATE: 12/30/2019 10:46 AM   2018L013059

68.     At all relevant times, Plaintiffs Sharda Clay and ███████ were "PCC Assigned Patients" who were under the care of a physician employed by, or under contract with, PCC. Plaintiffs were not under the care of any other physician. In fact, at all relevant times, Plaintiffs were under the care of Jennifer L. Rossato, D.O., Chidinma Osefo, M.D. and Tamajah Gibson, M.D., who were the actual and/or apparent agents, servants and/or employees of PCC.

69.     At all relevant times, Plaintiffs Sharda Clay and ███████ were **not** a "Non-PCC Assigned Patient", which is defined as "any patient under the obstetrical care of another physician who is not a physician employed by or under contract with PCC Community Wellness Center." **See Exhibit D, para. 2.**

70.     The pre-tort relationship between WSMC and PCC gives rise to a duty implied in law and/or an equitable duty on the part of Third Party Defendant PCC  to indemnify WSMC in connection with Plaintiffs' lawsuit if WSMC is found liable to Plaintiffs based on an allegation(s) that PCC COMMUNITY WELLNESS CENTER and/or Third Party Defendants JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D. and/or TAMAJAH GIBSON, M.D. were employees and/or actual and/or apparent agents of WSMC.

71.     Should WSMC be found liable to Plaintiffs based on any allegation that PCC COMMUNITY WELLNESS CENTER and/or Third Party Defendants JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D. and/or TAMAJAH GIBSON, M.D. were employees and/or actual and/or apparent agents of WSMC— such liability being denied—so that WSMC's liability is vicarious or derivative, PCC COMMUNITY WELLNESS CENTER is obligated to indemnify WSMC for such liability for any settlement entered into by or judgment rendered against WSMC, and for attorneys' fees, costs, expenses and all sums allowed by law.

WHEREFORE, Third Party Plaintiff VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, respectfully requests that, if it be determined that it is liable to Plaintiffs for any alleged negligence by PCC Community Wellness Center and/or JENNIFER L. ROSSATO, D.O., CHIDINMA OSEFO, M.D. and/or TAMAJAH GIBSON, M.D. — liability that it continues to deny— a judgment be entered in Third Party Plaintiff's favor and against PCC Community Wellness Center for indemnity in an amount equal to any settlement entered into by or verdict rendered against VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER in regards to this lawsuit, and for attorneys' fees, costs, expenses and all sums allowed by law.

**DEFENDANTS REQUEST TRIAL BY JURY**

FILED DATE: 12/30/2019 10:46 AM   2018L013059

Respectfully Submitted,

SMITHAMUNDSEN LLC

/s/ Moses Suarez

_____

One of the Attorneys for Defendant,
VHS WEST SUBURBAN MEDICAL
CENTER, INC., d/b/a WEST SUBURBAN
MEDICAL CENTER

Moses Suarez – msuarez@salawus.com
Emily L. Berris – eberris@salawus.com
SMITHAMUNDSEN LLC
150 N. Michigan Ave., Ste. 3300
Chicago, IL 60601
(312) 894-3200
(312) 894-3210 – FAX

Exhibit C

## CERTIFICATION

Pursuant to the provisions of 42 U.S.C. § 233, and by virtue of the authority delegated to me by the Attorney General under 28 C.F.R. § 15.4 and through the United States Attorney for the Northern District of Illinois, I hereby certify that I have read the complaint in *Sharda Clay, etc. v. VHS West Suburban Medical Center, Inc., d/b/a West Suburban Medical Center v. PCC Community Wellness Center, et al.*, No. 2018 L 013059 (Circuit Court of Cook County, Illinois), and all attachments thereto. On the basis of the information now available, I find that at the relevant times, the PCC Community Wellness Center was a private entity receiving grant money from the Public Health Service pursuant to 42 U.S.C. § 233. Further, I certify that Jennifer Rossato, D.O., Chidinma, Osefo, M.D., and Tamajah Gibson, M.D., were acting within the scope of their employment at the PCC Community Wellness Center with respect to the incidents referred to in the complaint. Accordingly, for purposes of the above case, the PCC Community Wellness Center, Jennifer Rossato, D.O., Chidinma, Osefo, M.D., and Tamajah Gibson, M.D., are deemed to be employees of the United States pursuant to 42 U.S.C. § 233, for Federal Tort Claims Act purposes only.

s/ Thomas P. Walsh
THOMAS P. WALSH
Chief, Civil Division
Office of the United States Attorney
  for the Northern District of Illinois

Date: March 11, 2021